Curia, per

O’Neall, J.
Two questions arise in this case. 1st. Did the notes accepted by the defendant, Judge, operate as an agreement to suspend his right of distress until there was a default in payment ? 2d. Was there a sufficient consideration to make the agreement to suspend enforcible as a legal contract 1
1st. The receipts given for the notes are, that they, when paid, shall be in full of the respective quarters of rent for which they are given. The plain import of this is, on the part of the landlord, I accept this in lieu of rent, until the security is due, then, if it be not paid, my remedy by distress will be resorted to. It is very true, that making of a promissory note, or bill, is not, of itself, sati faction of an antecedent debt. But yet it is equally if it be accepted as payment, it would have that effe the mere making of a promissory note or bill be *438 faction of a precedent debt, what legal effect does it have1? It unquestionably operates to suspend the party’s right to sue on the old debt until a right of action would be given on the new. In the language of some of the cases, it is prima facie satisfaction, and this prima facie conclusion must be removed before the party can recover on the old debt. This cannot be denied in cases of simple contract, for the books are full of such cases, as Burdick vs. Green, 15 Johns. 247; Pintard vs. Tackington, 10 Johns. 103 ; Angel vs. Tilton, 8 Johns. 149; and Holmes & Drake vs. Decamp, 1 Johns. 34. The difficulty is in saying what is the effect of a bill or note on a higher security. Generally speaking, there is no doubt about the rule, that it would not deprive the party of the benefit of such higher security by extinguishing it. But I do not perceive why it may not be considered as a contract to wait on the higher security until the note or bill is due, and then, if not paid, to resort to it. Mr. Chitty, in his treatise on Contracts, 593, after stating generally the rule which I have stated, and which is extracted from cases of simple contracts, says: “ The reason that the instrument, during its currency, is a bar to an action for the debt, is, that the entering into a new engagement and security, by becoming a party to an instrument which subjects the debtor to peculiar liabilities, or affords the creditor fresh and peculiar rights, constitutes a new and good consideration for giving credit. During the currency of the security, the original remedy is therefore suspended, or in abeyance.” The reason thus given for the rule makes it applicable to all classes of debts, and in all it would have equal effect: for if it be good as a contract, to give time on a contract of equal degree, it must be so of one of superior degree. In Chitty on Bills, 123, the rule is stated, “ a person, by taking a bill of exchange or promissory note, in satisfaction of a former debt, or of a debt created at the time, is precluded from afterwards waiving it, and suing the person who gave it to him for the original ebt, before the bill is due; for the taking of the bill mounts to an agreement to give the person delivering it lit for the length of time it has to run.” The general terms rule cover all debts, but it is true the cases referred to -re the original contracts were simple contracts. *439 Bat the Judges do not make any thing of that circumstance. Indeed, in all the cases, (as in Steedman vs. Gooch, 1 Esp. 3,) the language is used as was by Lord Kenyon, in that case, who said that “the law was clear, that if in payment of a debt, the creditor is content to take a bill or note, payable at a future day, he cannot legally commence an action on his original debt, until such bill or note becomes payable, or default is made in payment.” In Putnam vs. Lewis, Adm'r. of Lewis, 8 Johns. R. 304, where a note was given by the defendant, for an account against his intestate, it was held that the note was no payment of the book debt; it could only suspend the right of action during the time allowed for the payment of'the note. Looking at the note or bill taken in satisfaction as a contract to give time, if it be founded on a sufficient consideration, there can be no difficulty in holding it to be binding upon the creditor by a contract of superior as well as one of equal degree. The cases from 1 N. & McC. 187; 3 McC. 484, and 4 McC. 544, do not militate against this view. For in the case from 1 N. & McC. an order was drawn on a person not in funds, and hence its non-payment cast the landlord back on his original rights. In the case from 3 McC., the single bill expressed upon its face that it was given for rent, and there was no attempt to enforce payment until it was due. In 4 McC., the case was on a penal bond, conditioned to pay ■in instalments, one of which was due before the distress was resorted to. This was enough ; for the debtor had not kept his contract, and hence the creditor could not be compelled to do it. There is, therefore, I think, no difficulty in concluding that the notes accepted by the landlord were an agreement on his part to extend the time of payment. It is, then, necessary to enquire whether this agreement is supported by a sufficient consideration.
2d. Any thing which confers benefit on the party promising, or is loss or inconvenience to the party to whom the promise is made, is a sufficient consideration. Chitty on Con. 25. Here the enquiry will be, was the making of the notes a benefit to the landlord, ora loss to the tenants? It gave to the landlord an additional security, and that a commercial one, upon which he could raise money, and *440 which, if not paid, would then give place to the former security, the right to distrain.
This, it seems to me, was a plain benefit. So, too, the debtor, the tenant, placed himself in this position: if he failed to pay, he was liable to be protested, and thus lose his credit, which, to a man in trade, would be a great loss. And everywhere, the fact of making a promissory Negotiable note, subjects a party to a new liability ; for if it be negotiated before due, all the maker’s defences against the original creditor are gone.
In the extract already made from Chitty on Contracts, 593, the making of such a note or bill is stated to be “ a new and good consideration for giving credit.” In Leigh’s N. P. 1, 29, the same principle is affirmed, and the case of Ikin vs. Brook, 1 B. & A. s. 124, (20 Eng. C. L. 357,) is referred to. That case was brought on a contract of indemnity, which, with the consideration, was set out as follows, in the 1st count, viz : the defendant and one West, as assignees of John Ikin, a bankrupt, preferred certain claims against the plaintiff, and that in consideration of the plaintiff having delivered to them two promissory notes of him, the plaintiff, for £100, and £400, payable to them, as such assignees, as a composition for and in satisfaction of all claims which they, as assignees, had against the plaintiff, they promised to indemnify him against all and every other liability which he was under on account of John Ikin. The 2d count stated the consideration the same as to the notes, and added, uand also a cognovit,” and laid the promise to be in consideration of the money so secured to be paid to them, it was held by the court that the consideration thus stated was sufficient, and that the plaintiff might recover on the indemnity without the payment of the money thus secured to be paid. This, it will be seen, is the very case before the court; for there, as well as here, the security for an existing debt was the consideration. Being hence satisfied that the consideration is enough to sustain the contract to give time on the contract for rent until the notes were due, it follows that that contract bound Judge, and that he had no right to distrain for rent arrear; and that he is liable for damages for the trespass committed in *441 levying his distress warrant. The jury were therefore right, and their verdict cannot be disturbed.
The motion is dismissed.
Richardson, Butler, Wardlaw and Frost, JJ. concurred.